IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**MELVIN LEE CRAFT,**

    **Plaintiff,**

vs.                                  Case No. 4:06cv424-MP/WCS

**MONICA DAVID, TENA PATE
and FREDERICK DUNPHY,
FLORIDA PAROLE COMMISSIONERS,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, filed a second amended civil rights complaint under 42 U.S.C. § 1983. Doc. 13. Service was directed, doc. 16, and Defendants filed an answer and motion for summary judgment. Doc. 23. Plaintiff was advised of his burden in opposing the summary judgment motion, doc. 24, and Plaintiff filed a response on June 11, 2007. Doc. 28.

**Allegations of the Complaint**

Plaintiff alleged that during the Defendants' November 2, 2005, meeting to determine Plaintiff's parole prognosis, they retroactively applied laws not in effect when Plaintiff's crime was committed in 1974 to deny Plaintiff's release on parole and set his

new parole hearing in July of 2007. Doc. 13, p. 7. Plaintiff states that the Defendants' decision was based upon a judicial objection, dated September 6, 2005, from the sentencing court. *Id.*, at 7-8. Plaintiff notes that in 1974, the Defendants did not have the "right" to notify the sentencing court and seek judicial opinion to consider Plaintiff for parole. *Id.*, at 8. Plaintiff brings several separate claims[1] concerning the parole process, but all claims are essentially based on this factual scenario concerning the parole review in 2005.

**Standard of review**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of

---

[1] Plaintiff contends his ex post facto rights are violated by the retrospective application of amended parole laws, by the notification of the sentencing court and the seeking of judicial opinion. Plaintiff also challenges the use of the "new information" from the judicial opinion, and the extension of his presumptive parole release date based on the sentencing court's concerns. Further, Plaintiff challenges the reliance on the judicial opinion as violating the separation of powers provision of the Florida Constitution and by providing an "indefinite sentence" and denying Plaintiff his right to be present at the parole hearing and "to confront the judicial objection . . . ." *Id.*, at 11.

evidence is insufficient. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

Plaintiff was convicted of robbery on September 17, 1974, the crime having been committed on June 14, 1974. Doc. 23, ex. A (doc. 23-2, p. 4).[2] Following the jury trial, Plaintiff was sentenced on October 11, 1974, to a term of Life for the Robbery. Doc. 23, ex. A (doc. 23-2, p. 3); doc. 28, p. 2.

---

[2] Hereafter, all references to exhibits are to those attached to document 23, unless otherwise noted. References are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page on the electronic docket. Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.

The Parole Commission entered an order on September 9, 1981, directing that Plaintiff would be released on parole on October 20, 1981, and remain under supervision for the next 10 years. Doc. 23, ex. B (doc. 23-2, p. 6); *see also* doc. 28, ex. B. Plaintiff's parole was revoked less than a year later, on August 4, 1982. Doc. 23, ex. B (doc. 23-2, p. 8). The revocation was based on Plaintiff's conviction[3] for possession of a controlled substance on June 10, 1982. Doc. 28, ex. B; *see also* doc. 23, ex. B (doc. 23-2, p. 9).

On August 19, 1997, Plaintiff was granted parole for the second time. Doc. 23, p. 2; (doc. 23-2, p. 19); doc. 28, ex. C. This time, the terms of Plaintiff's supervision required that he would remain on parole supervision for the remainder of his life. *Id.*

A warrant was issued on November 18, 1999, to retake Plaintiff for violating three conditions of his release. Doc. 23, ex. D (doc. 23-2, p. 25). A hearing was held on March 16, 2000, and although the Commission found Plaintiff violated terms of his release, the Commission decided *not* to revoke Plaintiff's parole at that time. Doc. 23, p. 2; Ex. D (doc. 23-2, p. 24). Plaintiff was restored back to parole on April 14, 2000. Doc. 23, p. 2; Ex. D (doc. 23-2, p. 30); doc. 28, Ex. C.

Plaintiff's parole supervision was ultimately revoked on February 14, 2001, "upon a finding that Plaintiff used and/or possessed cocaine." Doc. 23, p. 2; Ex. E (doc. 23-2, p. 31. The revocation order indicates Plaintiff admitted to violating the terms of his parole release. Ex. E (doc. 23-2, p. 34).

---

[3] Plaintiff was sentenced to one year and one day. Case no. 82-673CF-A, Sarasota County, Florida. Doc. 23, p. 2; ex. B (doc. 23-2, p. 8).

At the Parole Commission meeting on September 12, 2001, Plaintiff's presumptive parole release date [hereinafter "PPRD"] was set at December 19, 2005. Doc. 23, p. 2; Ex. F (doc. 23-2, p. 36); *see alo* doc. 28, Ex. D.  Plaintiff's subsequent interview was in May of 2003, and the PPRD remained unchanged.  Ex. F (doc. 23-2, p. 39).  Plaintiff was scheduled to be re-interviewed in March of 2005.  Doc. 23, p. 3; Ex. F (doc. 23-2, pp. 36-37).  In March, prior to reaching the PPRD,[4] Plaintiff was given a subsequent interview and his PPRD was left intact.  Ex. F (doc. 23-2, p. 40); *see also* doc. 28, Ex. E.  Plaintiff's effective parole interview was scheduled for September, 2005. *Id.*

Plaintiff was interviewed on September 21, 2005, for possible parole release.  Ex. H (doc. 23-3, p. 6).  The Parole Examiner recommended that Plaintiff be released on parole on December 13, 2005, with the condition that he "serve the first six (6) months on Community Control . . . ."  Ex. H (doc. 23-3, p. 5-6); doc. 23, p. 3; doc. 28, Ex. E.

On October 4, 2005, Plaintiff's case was reviewed by a Parole Examiner in Tampa (Region V), to confirm Plaintiff's parole release plan.  Ex. I (doc. 23-3, p. 9); doc. 23, p. 3.  This examiner noted that the couple with whom Plaintiff intended to live had a mobile home in a restricted mobile home community, age 55 and over, and Plaintiff could only stay for a month due to "park rules."  Ex. I (doc. 23-3, pp. 9-10).  Thus, Plaintiff's "living arrangement [would] only be temporary" although the couple was trying to locate a permanent residence for Plaintiff.  Ex. I (doc. 23-3, p. 11).  The examiner found a second problem with Plaintiff's employment plan.  Ex. I (doc. 23-2, p. 10); doc.

---

[4] It is also noted that Plaintiff challenged his PPRD in state court, case 04-192CA. Doc. 23, p. 3; Ex. G (doc. 23-3, pp. 2-3).  His petition for writ of mandamus was denied on December 6, 2004.  Ex. G (doc. 23-3, p. 3).

23, p. 3. The business listed, "TK Painting and Waterproofing," could not be verified and the owner or manager could not be contacted. *Id.* Because of those two problems, the second Examiner deemed Plaintiff's release plan "NOT ACCEPTABLE." *Id.; see also* doc. 28, Ex. G.

Pursuant to Florida law, FLA. STAT. § 947.1745(6), the Parole Commission sent a letter on August 19, 2005, notifying the Chief Judge of the Circuit where Plaintiff was sentenced[5] that in September, Plaintiff would be given an effective parole release date interview. Ex. J (doc. 23-3, p. 13); doc. 28, Ex. F. The judge would have thirty days in which to provide a written response stating any objection to releasing Plaintiff on parole. *Id.* A letter was written on September 6, 2005, to the Parole Commission from Circuit Judge Lee Haworth stating that the "court does object to any parole consideration for" Plaintiff. Ex. K (doc. 23-3, p. 25); doc. 28, Ex. F.

The Commission "decided NOT to authorize [Plaintiff's] effective parole release date" due to the judicial objection dated September 6, 2005, and because Plaintiff's "proposed release plan" was unsatisfactory. Ex. L (doc. 23-3, p. 27); doc. 28, Ex. H. Plaintiff's PPRD was extended five years to December 19, 2010. *Id.* Plaintiff would be re-interviewed in July, 2007. *Id.* A letter was sent to Judge Haworth on November 7, 2005, advising that Plaintiff's PPRD was extended and that the Commission "concurred with [the Judge's] opinion as it relates to the judicial objection letter" the Judge sent on September 6, 2005. Ex. L (doc. 23-3, p. 28).

---

[5] The Statute specifies that if the sentencing judge is no longer serving, as was true in Plaintiff's situation, the Chief Judge of the Circuit is notified instead. Ex. J (doc. 23-3, p. 13).

Case No. 4:06cv424-MP/WCS

Plaintiff challenged the Commission's November 2, 2005, action of denying his release and extending his PPRD for 60 months.  Ex. M (doc. 23-3, p. 30, *et seq.*). Plaintiff specifically argued that the Commission "abused their discretion by applying retroactive application of laws not in effect at time of offense . . . ."  *Id.*, at 33.  Plaintiff noted that his prior parole releases never had judicial objections.  *Id.*, at 32.  Plaintiff's petition for writ of habeas corpus, ex. M, was denied on June 1, 2006.  Doc. 23, p. 4.[6]

**Analysis**

Plaintiff purports to bring six separate claims in his complaint; however, all of Plaintiff's claims are brought as Ex Post Facto claims.  Doc. 1; *see also* doc. 28, pp. 4-27.  Furthermore, all of Plaintiff's claims challenge the process, authorized and required by Florida law, by which the Parole Commission determines who is entitled to parole and who should be denied parole.

Claims that attack the "parole decision process" used by the Commission have long been settled in this Circuit.  In 1984, the Eleventh Circuit decided <u>Paschal v. Wainwright</u>, 738 F.2d 1173 (11th Cir. 1984), a case that challenged the 1978-1979 parole statute allowing the Commission use the Objective Parole Guidelines Act to make parole decisions.  The court held that because the ultimate discretion about granting parole remains with the Parole Commission, and because the guidelines "merely made a procedural change in how this discretion was exercised there was no

---

[6] Defendants quote at length from the circuit court order which denied the petition. Doc. 23, pp. 4-6.  The order should have been attached to the motion for summary judgment and is cited as Exhibit N.  That exhibit is not on the court's electronic docket. Regardless of that fact, Plaintiff received the exhibit from Defendants.  *See* doc. 28, p. 3.  Indeed, Plaintiff advises that he did not learn that his petition had been denied until receipt of the Defendants' exhibit.  *Id.*

ex post facto violation."  Johnson v. Wainwright, 772 F.2d 826, 827 (11th Cir. 1985), *explaining* Paschal.  Johnson discussed the holding in Paschal as follows:

> The guidelines have clarified the commission's exercise of its discretion.  The commission has created a system by which it attempts to use its discretion in a more uniform manner than previously.  The substantive power of the commission remains unchanged; only the manner in which it exercises this power has been altered.

Johnson, 772 F.2d at 827, *citing* Paschal, at 1179.  Subsequent decisions have followed Paschal, finding that mere procedural changes in evaluating a prisoner's suitability for parole release do not violate the Ex Post Facto Clause.  *See* Damiano v. Florida Parole and Probation Commission, 785 F.2d 929, 933 (11th Cir. 1986); Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir.), *cert. denied*, 479 U.S. 830 (1986).  A change that simply alters the Parole Commission's considerations for parole suitability is not violative of the Ex Post Facto Clause because it neither works to an inmate's detriment nor constitutes "a criminal or penal law."  Kelly v. Southerland, 967 F.2d 1531, 1532 (11th Cir. 1992), *citing* Dufresne v. Baer, 744 F.2d 1543, 1547 (11th Cir. 1984), *cert. denied*, 474 U.S. 817 (1985).  Guidelines are just that, guides for making decisions and controlling discretion.  Paschal, 738 F.2d at 1181; Kelly, 967 F.2d at 1532.

Furthermore, statutes violate the Ex Post Facto Clause when they are "penal or criminal," and impose "punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."  Conlogue v. Shinbaum, 949 F.2d 378, 381 (11th Cir. 1991), *cert. denied*, 506 U.S. 841 (1992) (holding Alabama's Incentive Good Time regulation did not violate ex post facto clause or due process clause).  Thus, where a subsequent change in the law is merely procedural, with no change in the "substance of the offence nor in its punishment," there

is no ex post facto violation.  Conlogue, 949 F.2d at 381.  In this case, all of Plaintiff's claims go to procedural changes, not material changes that affect the offense or the punishment for the crime.

The first claim is that FLA. STAT. §§ 947.1745(4) and 947.1745(6) (the judicial notification provision) violate the Ex Post Facto Clause.  Doc. 13, p. 7.  Section 947.1745(4)[7] provides:

> If an effective date of parole has been established, release on that date is conditioned upon the completion of a satisfactory plan for parole supervision.  An effective date of parole may be delayed for up to 60 days by a commissioner without a hearing for the development and approval of release plans.

In this case, Plaintiff provided a parole release plan which was deemed by the Commission to be unsatisfactory.  That decision does not violate Florida law, nor does it violate the Ex Post Facto clause.  The requirement that an inmate provide a parole release plan merely enables the Commission to better determine whether an inmate might be successful if released on parole and live within the boundaries of the law.  Not having a place to reside and not having employment with a steady source of income are factors that create a risk of future criminal conduct rather than living lawfully in society.  These are factors that may properly be considered in determining whether an inmate is then suitable for parole release.[8]  As this is simply part of the discretionary consideration

---

[7] In October of 1986, § 947.1745(4) was amended to "require the Commission to notify and seek comments from the sentencing court when an inmate was within 90 days of his or her effective parole release date ['EPRD'] interview."  Gaines v. Florida Parole Com'n, 743 So. 2d 118, 119 (Fla. 4th DCA 1999).  The statute was later amended and codified as FLA. STAT. § 947.1745(6).  Id.

[8] Florida law provides:

> No person shall be placed on parole until and unless the commission finds

process for parole suitability, summary judgment should be granted in Defendants' favor on this claim as it does not violate the Ex Post Facto clause.

As part of the first claim, Plaintiff also contends that FLA. STAT. § 947.1745(6), which provides an opportunity for a judge to present his or her objection to an inmate's parole release, violates his *ex post facto* rights. This statute[9] requires the Commission

---

> that there is reasonable probability that, if the person is placed on parole, he or she will live and conduct himself or herself as a respectable and law-abiding person and that the person's release will be compatible with his or her own welfare and the welfare of society. No person shall be placed on parole unless and until the commission is satisfied that he or she will be suitably employed in self-sustaining employment or that he or she will not become a public charge.

FLA. STAT. § 947.18.

[9] As is relevant, this statute provides:

> (6) Within 90 days before the effective parole release date interview, the commission shall send written notice to the sentencing judge of any inmate who has been scheduled for an effective parole release date interview. If the sentencing judge is no longer serving, the notice must be sent to the chief judge of the circuit in which the offender was sentenced. The chief judge may designate any circuit judge within the circuit to act in the place of the sentencing judge. Within 30 days after receipt of the commission's notice, the sentencing judge, or the designee, shall send to the commission notice of objection to parole release, if the judge objects to such release. If there is objection by the judge, such objection may constitute good cause in exceptional circumstances as described in s. 947.173, and the commission may schedule a subsequent review within 2 years, extending the presumptive parole release date beyond that time. However, for an inmate who has been:

(continued...)

to obtain input from the sentencing judge about any objections to granting parole. This input, whether favorable or unfavorable, is then used by the Commission in making its parole decision. As noted by Defendants, the statute does not restrict the Commission's decision and it may reject any judicial objected provided. The Commission does not have to afford the judicial objection, if stated, any weight whatsoever and has the discretion to ignore or follow a judicial opinion on the matter of parole release. Again, this is a *procedure* employed to make parole determinations. The procedure does not alter or add to the punishment imposed for Plaintiff's crime; it simply provides more information to the Commission so that an informed and reasoned decision can be made. Florida courts have considered the constitutionality of the judicial objection

---

[9](...continued)

    (a) Convicted of murder or attempted murder;
    (b) Convicted of sexual battery or attempted sexual battery; or
    (c) Sentenced to a 25-year minimum mandatory sentence previously provided in s. 775.082,

the commission may schedule a subsequent review under this subsection once every 5 years, extending the presumptive parole release date beyond that time if the commission finds that it is not reasonable to expect that parole would be granted at a review during the following years and states the bases for the finding in writing. For any inmate who is within 7 years of his or her release date, the commission may schedule a subsequent review prior to the 5 year schedule. With any subsequent review the same procedure outlined above will be followed. If the judge remains silent with respect to parole release, the commission may authorize an effective parole release date. This subsection applies if the commission desires to consider the establishment of an effective release date without delivery of the effective parole release date interview. Notice of the effective release date must be sent to the sentencing judge, and either the judge's response to the notice must be received or the time period allowed for such response must elapse before the commission may authorize an effective release date.

FLA. STAT. § 947.1745(6) (amended 1997).

Case No. 4:06cv424-MP/WCS

provision and have upheld it.  See Gaines v. Florida Parole Com'n, 743 So. 2d 118, 120-121 (Fla. 4th DCA 1999); Gattis v. Florida Parole & Probation Com'n, 535 So. 2d 640, 642 (Fla. 1st DCA 1988) (holding that the judicial objection statute "represent[s] a mere procedural change in or enlargement of the manner by which the Commission may exercise its discretion" and does not violate the Ex Post Facto clause); *see also* Florida Parole Comm'n v. Snipes, 616 So. 2d 1177 (Fla. 1st DCA 1993) (rejecting argument that extending a presumptive parole release date based on nonspecific judicial objections violated the Due Process Clause); Florida Parole Com'n v. Jackson, 618 So. 2d 766, 767 (Fla. 1st DCA 1993) (same).  I also conclude that the judicial notification statute [FLA. STAT. § 947.1745(6)] does not run afoul of the Ex Post Facto Clause.  Summary judgment should be granted in Defendants' favor as to claim one in its entirety.

Plaintiff's second claim is labeled as "notification and opinion of sentencing court."  Doc. 13, pp. 7-9.  This challenge is based on the same statute addressed above with Plaintiff simply realleging that when his crime was committed, Defendants did not have the "right" to seek judicial opinion and that he is disadvantaged by this law.  This argument is unavailing as explained above.  Defendants are entitled to summary judgment on this claim as well.

Plaintiff's third claim is that "new information and exceptional circumstances" have been employed by the Defendants and has subjected Plaintiff to "unjust and arbitrary conduct."  Doc. 13, p. 9.  The new information Plaintiff challenges, again, is a rephrased attack on the judicial opinion procedures.  This procedural change is permissible and Defendants are entitled to summary judgment.

Plaintiff's fourth claim is titled, "extending of PPRD."  Doc. 13, p. 9.  Plaintiff claims that the retroactive reliance on laws not in effect in 1974 has inflicted "harder, disadvantage and onerous standards to his offense, conviction, sentence and initial parole evaluation prognosis that's over 30 years old."  *Id.*, at 10.  He contends Defendants could not have previously denied a fixed PPRD under § 947.18.  *Id.*, at 9.  Plaintiff also argues that the bare-bones judicial objection, without any supportive statements, allowed the Defendants to "get around 947.18" and extend his fixed PPRD by 60 months.  *Id.*, at 9-10.  Plaintiff's fourth claim is merely a rephrasing of his first three claims and, for the reasons previously expressed, Defendants are entitled to summary judgment in their favor.

In his fifth claim, Plaintiff attempts to argue that Defendants' actions have violated the separate of powers doctrine and that he is subject to an "indefinite sentence."  Doc. 13, pp. 10-11.  Separation of powers is purely a question of state law under the Florida Constitution and presents no federal question.  Dreyer v. Illinois, 187 U.S. 71, 83-84, 23 S.Ct. 28, 32, 47 L.Ed. 79 (1902); Sweezy v. New Hampshire, 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957).

Further, this claim has been addressed by Florida courts.  In Gattis, *supra*, the court held that the Commission's reliance on a judicial objection to deny parole release does not violate the Separation of Powers Clause.  A judicial opinion is only an opinion.  It is simply additional information to consider.  The final decision about parole still remains at the discretion of the Parole Commission, a member of the executive branch.  A judicial objection does not require the Commission to take any particular action.  535 So. 2d at 641, *citing* Florida Parole and Probation Commission v. Paige, 462 So. 2d 817

(Fla. 1985); May v. Florida Parole and Probation Commission, 435 So. 2d 834 (Fla. 1983). Summary judgment is appropriate on this claim as well.

Plaintiff's sixth and final claim is titled, "interest rights." Doc. 13, p. 11. Again, Plaintiff has restated the same ex post facto claims already presented and simply assets that by not applying laws that were in effect at the time of his 1974 offense, Plaintiff has been deprived of his rights. *Id.* Specifically, Plaintiff claims he is now disadvantaged and denied "to be present at the [November 2, 2005] hearing" and, thus, denied his "right to confront the judicial objection brought forth by the court, and" any other material that was presented again him.

A parole hearing in which the Commission determines whether or not to grant parole is not the same as a criminal trial. There is no constitutional right to confront a witness or evidence brought against a prisoner in a parole hearing, and there is no corresponding right to cross examine members of the Parole Commission or persons who provide statements to members of the Commission. *See* Tarlton v. Clark, 441 F.2d 384, 386 (5th Cir. 1971) (denying alleged "right to cross examine members of the parole board"). While there are due process rights that attach to a parole revocation proceeding, such as the right "to confront and cross-examine adverse witnesses," there are no corresponding due process rights in parole release hearings in Florida. *See* Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) (establishing minimum due process requirements for parole revocation proceedings). The State of Florida provides only for the *possibility* of parole. Consequently, there is no protected liberty interest in parole. Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir.), *cert. denied*, 479 U.S. 830 (1986), *citing* Hunter v. Florida Parole & Probation

Comm'n, 674 So. 2d 847, 848 (11th Cir. 1982).[10]  In Hunter v. Florida Parole & Probation Commission, the Court rejected a claim that the Commission improperly calculated a presumptive parole release date and, thus, violated due process, holding that because there was no liberty interested in parole, there was no due process violation.  Hunter, 674 F.2d at 848.  The protections of the Due Process Clause do not attach to the procedures for granting parole.  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979); Hunter v. Florida Parole & Probation Commission, 674 F.2d 847, 848 (11 Cir. 1982); Meola v. Dep't of Corrections, 732 So.2d 1029, 1034 (Fla. 1998) ("In Florida, parole-eligible inmates do not have a legitimate expectation of liberty or right to expect release on a certain date even after they have been given a specific Presumptive Parole Release Date (PPRD).").

**CONCLUSION**

There is no genuine dispute of material fact as to any of Plaintiff's claims. Defendants have demonstrated their entitlement to summary judgment as a matter of law on each of Plaintiff's claims.

---

[10] "It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right."  FLA. STAT. § 947.002(5).

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 23, be **GRANTED** on all claims, and the Clerk be **DIRECTED** to enter judgment in Defendants' favor.

**IN CHAMBERS** at Tallahassee, Florida, on November 27, 2007.


 s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**